UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 5:15-CR-20-KKC |
|     Plaintiff, | |
| V. | OPINION AND ORDER |
| RONALD C. LEWIS, | |
|     Defendant. | |

*** *** ***

This matter is before the Court on motion to suppress evidence filed by defendant Ronald C. Lewis (DE 45). The issue in this case is whether two officers of the London, Kentucky police department legally opened the doors of Lewis's truck after finding him sleeping in a Walmart parking lot. He argues that they did not and seeks to suppress 493 oxycodone pills that they found there and also four Xanax pills that they found on his person after arresting him.

### I.  Facts

At the hearing on this matter, Officer Greg Turner testified that on the evening of August 14, 2014, he was dispatched to a Walmart in London, Kentucky because there were reports that a woman inside the store was intoxicated. Officer Turner entered the store and found the woman, later identified as Carol Lakes, standing up, holding on to her shopping cart, and falling in and out of sleep. Officer Turner approached Lakes and spoke with her. Lakes said she had been taking pain medication for back trouble.

Officer Turner has 13 years of law enforcement experience including four years investigating drug crimes with Operation Unite, a regional law-enforcement coalition that

conducts undercover investigations of drug activity. Based on that experience, Officer Turner determined that Lakes was under the influence. He testified that her speech was slurred; she had red and glassy eyes and a dry mouth; she could not keep her eyes open; and she was balancing herself by holding on to a shopping cart.

Lakes told Officer Turner that her boyfriend, later identified as Lewis, was waiting for her in a truck parked outside the store. Officer Turner told Lakes that if her boyfriend was able drive her home, she could leave with him. Lakes told Officer Turner that her boyfriend was fine, and she agreed to bring Officer Turner to speak with him in the parking lot. Once outside, Officer Turner was joined by Officer Rick Cloyd, also with the London Police Department. Ms. Lakes led the officers to a pickup truck parked in a handicapped parking spot.

According to Officer Turner, Lakes led Officer Cloyd to the passenger side of the truck. Meanwhile, Officer Turner approached the driver-side window. Officer Turner testified that the truck windows were tinted but that the interior of the truck was illuminated by nearby street lamps. He testified that, as he approached the truck, he could see Lewis sitting on the passenger side. In his police report, Officer Turner stated that Lewis had his eyes shut. (DE 45-2, Police Report.)

At that point, either Officer Cloyd or Lakes opened the passenger-side door. At the suppression hearing, Officer Turner testified that he was not sure which of the two opened the door. Lewis testified that Officer Cloyd opened the door. For purposes of this opinion, the Court assumes this is true.

Lewis testified that he had been asleep for roughly 20 minutes when the door was opened. Officer Turner testified that, with the opening of the passenger door, the truck's interior light was illuminated. He testified that he could see that Lewis was startled and

2

that Lewis "did a little jerk." At that point, he saw Lewis's left hand go back over the console. He testified that he could see a portion of a plastic baggie sticking out of Lewis's hand and that Lewis threw the baggie into the back floorboard. Officer Turner testified that he assumed the baggie contained marijuana because, based on his law enforcement experience, he knew that marijuana is often stored in plastic baggies and because Lewis was trying to hide the bag from the officers.

There is some discrepancy regarding what happened next and specifically regarding whether Officer Turner *first* shined his flashlight through the truck window and *then* opened the driver's side door or vice versa.

At the suppression hearing, Officer Turner initially testified that, after seeing Lewis throw the baggie, he immediately opened the driver-side door and then looked inside the truck with his flashlight and that he could then tell the baggie contained pills. In his police report, Officer Turner does not mention opening the driver-side door at all. He states only that, after seeing Lewis toss the baggie, "I then shined my flash light in through the window and observed the baggie with what appeared to be pills inside." (DE 45-2, Report at 6.)

After reviewing the police report at the suppression hearing, Officer Turner testified that, before opening the door, he first shined his flashlight through the window of the truck. He testified that, at that point, he could see that the baggy contained "bluish color stuff" and that it looked like pills. He testified that he then opened the door to get a closer look at the bag.

The Court will assume for purposes of this opinion that, after seeing Lewis toss the baggie into the back of the truck, Officer Turner first opened the driver-side door and then shined his flashlight in the truck. It was at this point that he could discern that the baggie

3

contained pills. This is consistent with Officer Turner's initial testimony at the suppression hearing and with his grand jury testimony in which Officer Turner stated that, after seeing Lewis toss the baggie in the back of the truck, "I opened the driver's door and shined the light, and I could tell there was a bag full of pills." (DE 45-3, Grand Jury Testimony at 4.) Further, this version of events is not inconsistent with Officer Turner's police report which does not mention opening the door at all. Thus, it is unclear from the report whether Officer Turner determined that the baggie contained pills before he opened the door.

At the suppression hearing, Officer Turner testified that, at this point, Lewis was out of the vehicle. Officer Turner then joined Officer Cloyd, Lewis, and Lakes on the passenger side of the vehicle. Officer Turner asked Lewis about the pills and Lewis said he did not know anything about them. Officer Turner testified that Lewis appeared to be under the influence.  He testified that Lewis was arrested and that the officers found four Xanax in Lewis's pocket.

Lewis argues that all of the pills should be suppressed because the search of his truck violated the Fourth Amendment.

## II.      Discussion

The Fourth Amendment protects against unreasonable searches and seizures. *California v. Carney*, 471 U.S. 386, 390 (1985). It does so by generally requiring that law enforcement obtain a warrant before conducting a search, but there are exceptions to this general rule. *Id.*  For example, the Sixth Circuit has recognized that exigent circumstances may justify a warrantless entry where police officers act according to their role as "community caretakers." *United States v. Washington*, 573 F.3d 279, 287 (6th Cir. 2009). The court has found that this exception justifies a warrantless home entry to stop an

4

"ongoing nuisance," *United States v. Rohrig*, 98 F.3d 1506, 1522 (6th Cir. 1996) and to render emergency aid. *Washington*, 573 F.3d at 287.

The community caretaking function "applies only to actions that are 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *United States v. Williams*, 354 F.3d 497, 508 (6th Cir. 2003) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). "The police do not need probable cause when engaged solely in community caretaking since '[t]he standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures.'" *United States v. Johnson*, 410 F.3d 137, 144 (4th Cir. 2005) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 370 n. 45 (1976)).

Here, Officer Cloyd's opening of the passenger-side door was justified under the community-caretaking exception to the warrant requirement. At the time that Officer Cloyd opened the door, the officers were aware that Lakes, Lewis's girlfriend and passenger, was in a Walmart sufficiently under the influence of something to provoke someone to call the police. Officer Turner found her inside the store nodding on and off even while standing, using her shopping cart for balance. Lakes admitted to him that she had been taking pain pills. He reasonably determined that, for the safety of the community, he could not let her drive home.

That led the officers to search for Lewis, Lakes' alleged driver that evening. There is no dispute that, when the officers approached Lewis's truck, their sole purpose was to find Lakes a safe ride home. They were not investigating a crime.

Lakes told Officer Turner that Lewis was fine to drive. However, when the officers arrived at the truck, Lewis was not driving at all. Instead, he was sleeping in the passenger

seat. At that point, the officers were faced with an immediate need to take some action to best ensure the safety of Lakes and the community.

They could not let Lakes drive the truck off the lot. She was admittedly and visibly under the influence of pain pills. Perhaps, the officers could have arrested Lakes. That would have ensured her safety and that of the community but it is uncertain what the charges would have been. She was clearly under the influence of pain pills but she indicated that she was legitimately taking them for back pain and the officers had not witnessed her driving. Further, that would not have solved the problem of Lewis. They could not simply leave him sleeping in the parking lot without checking on his condition. Given the totality of the circumstances, the officers acted reasonably in opening the passenger-side door to wake Lewis to determine if he was alright and capable of driving Lakes home.

This is especially true because the intrusion here was minimal. Lewis was not sleeping inside his house. He was sleeping in a truck in the middle of a Walmart parking lot. "'[F]or the purposes of the Fourth Amendment there is a constitutional difference between houses and cars.'" *Cady*, 413 U.S. at 439 (quoting *Chambers v. Maroney*, 399 U.S. 42, 52 (1970). The difference "stems both from the ambulatory character of the latter and from the fact that extensive, and often noncriminal contact with automobiles will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." *Id.* at 442. Further, after opening the door to check on Lewis, Officer Cloyd did not open the glove compartment, search under the seats, or search anywhere in the truck. There is no evidence that he did anything except open the truck door.

Officer Turner testified that, after Officer Cloyd opened the door, he saw Lewis toss a plastic baggie into the back floorboard of the truck. At this point, the officers' function

6

changed to the investigation of a crime and Officer Turner opened the door and shined his light in the truck. This intrusion was warranted under the automobile exception to the warrant requirement. Under that exception, "an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime." *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (citing *California v. Carney*, 471 U.S. 386, 390-94 (1985)). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* (quoting *United States v. Bennett*, 905 F.2d 931, 944 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *United States v. Wright*, 16 F.3d 1429, 1437 (quoting *Illinois v. Gates*, 462 U.S. 213, 238)). In determining whether probable cause exists, the court looks to the objective facts known to the officers at the time of the search. *Smith*, 136 F.3d at 1075.

At the time that Officer Turner opened the truck door, he had already determined that Lakes was under the influence and she had admitted taking pain pills. He was aware that Lakes was sleeping on and off while standing in Walmart and that Lewis had also been sleeping in the truck. He was able to see a clear plastic bag in Lewis's hand. And he saw Lewis attempt to conceal the plastic bag by throwing it into the back floorboard after he saw the officers. The Supreme Court has recognized that "deliberately furtive actions" are proper factors to consider in assessing probable cause. *Sibron v. New York*, 392 U.S. 40, 66-67 (1968). See also *United States v. McCraney*, 674 F.3d 614, 621 (6th Cir. 2012) ("This court has recognized that suspicious movements made in response to police presence may properly contribute to an officer's suspicions.")

7

Officer Turner's considerable law enforcement experience, including years of investigating narcotics crimes, led him to reasonably believe that there was a fair probability that contraband or evidence of a crime would be found in the plastic baggie that Lewis had attempted to hide. The probable cause standard "does not require that the officers *know* that evidence is contraband." *United States v. McLevain,* 310 F.3d 434, 441 (6th Cir. 2002). Instead, "[i]t merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime." *Id*. (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

After searching the truck and discovering the 493 pills, the officers had probable cause to arrest Lewis. The search of his person was a lawful search incident to arrest. *See Chimel v. California*, 395 U.S. 752, 762 (1960).

**III. Conclusion**

For all these reasons, the Court **HEREBY ORDERS** that Lewis's motion to suppress (DE 45) is **DENIED.**

Dated September 4, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

8